[Cite as *MacConnell v. London Corr. Inst.*, 2011-Ohio-1846.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

RION T. MACCONNELL

    Plaintiff

    v.

LONDON CORRECTIONAL INSTITUTION

    Defendant
    Case No. 2008-10528

Judge Clark B. Weaver Sr.

DECISION

{¶ 1} Plaintiff brought this action alleging unauthorized disclosure of his medical information. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} At all times relevant, plaintiff was an inmate in the custody and control of defendant pursuant to R.C. 5120.16. Plaintiff testified that when he entered defendant's custody in 2006, he had been taking prescription medication for a pancreatic ailment for approximately three years. Plaintiff stated that a physician employed by defendant prescribed the same medication and that defendant refilled the prescription several times through early 2008.

{¶ 3} According to plaintiff, he exhausted his supply of the medication in February 2008 and defendant failed to timely refill the prescription. Plaintiff filed a series of institutional complaints and grievances concerning the delay. (Plaintiff's Exhibits 1, 2, 5, 6, 7, 8.) Plaintiff stated that he also asked his father, Robert MacConnell, to contact defendant by telephone and to determine whether MacConnell

could purchase the medication at a private pharmacy and deliver it to plaintiff during visitation hours.

**{¶ 4}** Indeed, MacConnell testified that he visited plaintiff weekly at the prison, and that plaintiff told him during one such visit in February 2008 that defendant was late in refilling his prescription medication. According to MacConnell, plaintiff asked him to contact defendant's medical department and determine if anything could be done to get the prescription refilled in a more timely fashion. As a result, MacConnell placed a telephone call to defendant on or about February 22, 2008, and his call was directed to defendant's Health Care Administrator, Karen Smith.

**{¶ 5}** MacConnell testified that he informed Smith that he was concerned about plaintiff's not receiving medication for his pancreatic ailment, and that Smith said she would research the matter and return his call. According to MacConnell, when Smith called him back, she stated that the medication which plaintiff needed was actually for treatment of his hepatitis; MacConnell could not recall whether Smith specified a particular type of hepatitis. MacConnell testified that he had no knowledge of plaintiff having hepatitis, and that it upset him to learn that plaintiff had the disease inasmuch as he was close with plaintiff and felt that plaintiff had kept this information from him. MacConnell stated that he sent plaintiff a letter asking about the matter and that plaintiff, in response, became upset and denied having hepatitis.

**{¶ 6}** Plaintiff testified that he was indeed distressed by the episode and that it damaged his relationship with MacConnell. On March 24, 2008, plaintiff sent an informal "kite" to Deputy Warden of Special Services Curtis Wingard to complain about the alleged disclosure, and Wingard responded by asking for more information. (Plaintiff's Exhibit 6.) On April 2, 2008, plaintiff sent another kite to Wingard and asked if an affidavit from MacConnell would be helpful to his investigation, and Wingard replied in the affirmative. (Plaintiff's Exhibit 7.) On April 4, 2008, plaintiff forwarded a kite to Wingard with a supporting affidavit from MacConnell. (Plaintiff's Exhibits 8, 11.) On April 10, 2008, plaintiff filed an informal complaint with Wingard in which he objected to his "medical info [being] given to a third party, without my knowledge or OK!" (Plaintiff's Exhibit 10.)

{¶ 7} Wingard, whose administrative duties included supervising defendant's medical department, testified that he conducted an investigation into plaintiff's allegations. Wingard stated that he questioned Smith about the matter twice, and that both times she denied disclosing plaintiff's hepatitis status or other medical information to MacConnell. According to Wingard, he concluded from his investigation that Smith's interaction with MacConnell was consistent with a Department of Rehabilitation and Correction (DRC) policy of telling family members who inquire about inmates' medical information that all inmates receive adequate care and that details of such care cannot be disclosed.

{¶ 8} Smith, who testified that she is now on disability leave from defendant, stated that she recalled having one brief conversation with MacConnell in which he expressed concern that plaintiff was not receiving an unspecified medication for an unspecified condition. According to Smith, she did not share any of plaintiff's medical information with MacConnell and she told him only that she would look into the matter. Smith testified that, during her tenure as defendant's Health Care Administrator, she commonly received calls from inmates' family members regarding inmates' health care, but that DRC policy on the confidentiality of medical records prohibited any disclosure of medical information. (Plaintiff's Exhibit 3.)

{¶ 9} "In Ohio, an independent tort exists for the unauthorized, unprivileged disclosure to a third party of nonpublic medical information that a physician or hospital has learned within a physician-patient relationship." *Biddle v. Warren Gen. Hosp.*, 86 Ohio St.3d 395, 1999-Ohio-115, paragraph one of the syllabus. The Supreme Court of Ohio recognized the tort in *Biddle* based upon the policy that "[i]n general, a person's medical records are confidential. Numerous state and federal laws recognize and protect an individual's interest in ensuring that his or her medical information remains so." *Hageman v. Southwest Gen. Health Ctr.*, 119 Ohio St.3d 185, 2008-Ohio-3343, ¶9. "Indeed, even a prison inmate's personal medical records are qualifiedly protected from disclosure and are not 'public' records *per se*." *Wilson v. Ohio Dept. of Rehab. & Corr.* (1991), 73 Ohio App.3d 496, 499.

{¶ 10} The confidentiality of medical records is not absolute. In the absence of authorization "a physician or hospital is privileged to disclose otherwise confidential

medical information in those special situations where disclosure is made in accordance with a statutory mandate or common-law duty, or where disclosure is necessary to protect or further a countervailing interest that outweighs the patient's interest in confidentiality." *Biddle*, supra, at paragraph two of the syllabus.

{¶ 11} Inmate medical records are compiled, maintained, and kept by defendant pursuant to R.C. 5145.22 and 5120.21. R.C. 5145.22 states, in part, that defendant's "chief physician shall keep a separate medical record of each prisoner as provided in division (C) of section 5120.21 of the Revised Code." "Medical record" is defined in R.C. 5120.21(C)(1) as "any document or combination of documents that pertains to the medical history, diagnosis, prognosis, or medical condition of a patient and that is generated and maintained in the process of medical treatment."

{¶ 12} "An inmate's right to privacy [in his medical records] is not an absolute right nor necessarily equivalent to that of a non-incarcerated citizen." *Wilson*, supra. Ohio Adm.Code 5120-9-49(F) provides that inmate medical records and other "[n]on-public records of the [DRC] may, in the sole discretion of the director, or designee, be made available to counsel of record of an inmate or releasee, researchers, law enforcement agencies, or other persons with a need for access to such documents, subject to other restrictions on such access as may be provided by law." "Thus, the disclosure of medical information may be protected by a qualified privilege predicated upon a 'need to know' or 'need for access' basis * * *." (Internal citations omitted.) *Wilson*, supra, at 499-500; see also *Hunt v. Ohio Dept. of Rehab. & Corr.* (1991), 77 Ohio App.3d 804, 807.

{¶ 13} In accordance with R.C. 5145.22, defendant's "chief physician" maintained a medical record for plaintiff which contained multiple documents stating that he has some type of hepatitis, at least one of which specifically identified him as having hepatitis C. Smith testified that these documents included a health history form that a nurse completed when plaintiff entered custody of DRC, an "intrasystem transfer and receiving" form that a nurse completed when plaintiff transferred to defendant from another DRC institution, and a "hepatitis C evaluation and treatment worksheet" that reflects vaccinations and other treatment received by plaintiff. (Defendant's Exhibits C, D, E.)

{¶ 14} Plaintiff explained that he does not believe he has any type of hepatitis, but that his medical record may have reflected otherwise because he receives periodic vaccinations for hepatitis C as a result of traveling abroad in the 1990s. Regardless, the evidence demonstrates that the medical professionals who assessed plaintiff's condition at defendant and other DRC institutions compiled a corresponding medical record which reflects that he does have some type of hepatitis.

{¶ 15} As stated earlier, Smith denied sharing any of plaintiff's medical information with MacConnell when they spoke by telephone. In contrast, MacConnell testified that Smith told him that plaintiff had an unspecified type of hepatitis for which he had been prescribed medication. Based upon the totality of the evidence and upon consideration of each witnesses' credibility, the court finds that Smith did inform MacConnell that plaintiff had an unspecified type of hepatitis.

{¶ 16} The court concludes that the evidence presented at trial does not demonstrate that Smith's disclosure to MacConnell accorded with any statutory mandate or common law duty, nor does it establish that such disclosure was necessary to protect or further a countervailing interest that outweighed plaintiff's interest in confidentiality. Moreover, the evidence does not show that MacConnell had a legitimate "need to know" such information so as to render the disclosure privileged under Ohio Adm.Code 5120-9-49(F). Accordingly, the court can find no interest that would justify the recognition of a privilege under the circumstances of this case.

{¶ 17} Furthermore, while plaintiff admittedly discussed certain aspects of his health with MacConnell and asked MacConnell to contact defendant in an attempt to facilitate more timely refills of his prescription for the pancreatic ailment, there is no evidence that plaintiff authorized any disclosure concerning his hepatitis status. Inmates may authorize the release of their medical records to a "licensed attorney at law or licensed physician" pursuant to R.C. 5120.21(C)(2), but plaintiff provided no such authorization, nor is MacConnell an attorney or physician.

{¶ 18} Finally, to the extent that defendant argues that plaintiff asserts a constitutional claim for invasion of privacy over which this court lacks subject matter jurisdiction, the court notes that "[a]s is evident in *Biddle* * * * breach of a patient's confidence in the form of an unauthorized disclosure of that patient's medical

information is an independent tort separate and distinct from the tort of invading one's privacy." *Herman v. Kratche*, Cuyahoga App. No. 86697, 2006-Ohio-5938, ¶16.

{¶ 19} For the foregoing reasons, the court finds that plaintiff has proven his claim by a preponderance of the evidence and, accordingly, judgment shall be rendered in favor of plaintiff.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

RION T. MACCONNELL

   Plaintiff

   v.

LONDON CORRECTIONAL INSTITUTION

   Defendant
   Case No. 2008-10528

Judge Clark B. Weaver Sr.

<u>JUDGMENT ENTRY</u>

This case was tried to the court on the issue of liability. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of plaintiff. The case will be set for trial on the issue of damages.

_____
CLARK B. WEAVER SR.

Judge

cc:

Jennifer A. Adair
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Richard F. Swope
6480 East Main Street, Suite 102
Reynoldsburg, Ohio 43068

RCV/cmd
Filed March 17, 2011
To S.C. reporter April 12, 2011